The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Terry P. TANNER, Defendant,

and Concerning

Mary Ellen Pollack and International
Fidelity and Insurance Company,
Professional Sureties–Appellants.

No. 86CA1721.

Colorado Court of Appeals,
Div. III.

Sept. 1, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Steven R. Newell, P.C., Steven R. Newell, Steven P. Martens, Denver, for professional sureties-appellants.

CRISWELL, Judge.

Sureties, Mary Ellen Pollack and International Fidelity and Insurance Company, appeal the trial court's denial of their motion for exoneration from liability on a $2,500 bond guaranteeing the appearance of defendant, Terry P. Tanner. We affirm.

The bond executed by sureties guaranteed defendant's appearance on January 21, 1986, and from "day to day, thereafter, until sentencing, final disposition or other order of said court...." The defendant appeared to plead guilty on June 2, 1986, but failed to appear for a subsequent probation hearing and, subsequently, the bond was forfeited and judgment entered against sureties.

On appeal, sureties argue, as they did before the trial court, that the county court's use of a pre-printed bond form extending their liability past conviction or a plea of guilty or of nolo contendere violated § 16–4–201, C.R.S. (1986 Repl.Vol. 8A), thus requiring their exoneration from liability. We disagree.

Section 16–4–201, C.R.S. (1986 Repl.Vol. 8A), provides in pertinent part:

"No bond shall be continued in effect following *a plea of guilty or of nolo contendere or following* conviction unless the written consents of the sureties,

if any, are filed of record. *No court shall require the posting of any form of bond which allows for the continuance of said bond after a plea of guilty or of nolo contendere or following conviction without the filing of record of written consents of the sureties, if any."* (emphasis added)

The emphasized portions of the statute were enacted in 1985, effective for acts committed on or after July 1, 1985. Colo. Sess.Laws 1985, ch. 136 at 624.

The 1985 changes followed the decision in *O'Neil v. People,* 198 Colo. 9, 595 P.2d 235 (1979), in which it was held that a surety's necessary written consent under § 16–4–201 to remain obligated on a bond following conviction could validly be provided by the terms of the bond first posted as security, continuing the surety's liability until the court's final sentence or order. Thus, the necessary consent to extended liability did not need to be renewed after a defendant's conviction. The *O'Neil* court found that the consent in the original bond to extended liability was valid despite the fact that it was *"prescribed* in the appearance bond form *required* by the Denver County Court."* (emphasis added)

■ The only effect on *O'Neil* of the 1985 changes to § 16–4–201 is that a trial court can no longer "require" as a bond condition a surety's advance consent to continue the bond beyond conviction or a plea of guilty or nolo contendere. However, the statutory changes do not void a surety's voluntary agreement to undertake such extended liability. If a surety freely consents to such liability in advance, a separate consent need not be obtained to continue liability past conviction. *O'Neil, supra.*

Thus, as the county court was not precluded, under *O'Neil* or § 16–4–201, from providing the bond form used here so long as it did not "require" its use or bar sureties from altering that provision extending liability past conviction, there remains the factual issue of whether the county court was mandating the use of such forms in contravention of the statute. And, because it is conceded that no evidence was presented at the motions hearing indicating that

sureties were required to post the disputed bond, disposition of this case depends on whether sureties or the People bore the burden of proof concerning whether the county court was requiring use of the bond form.

Sureties argue that the county's provision of a standard bond form imposing liability beyond the statutory minimum risk required the People to prove that sureties voluntarily entered the contract. We disagree.

■ The sureties affirmatively asserted that the form of the bond here was required by the county in violation of § 16–4–201. Thus, they bore the burden of establishing that proposition. *See National Cigarette Service Co. v. Farr,* 42 Colo. App. 356, 594 P.2d 603 (1979) (burden of proving contract illegal is on party so asserting). *See also McCormick on Evidence* § 336 (E. Cleary 2d ed. 1972) (burden of producing evidence is usually cast first upon the party who has pleaded the existence of the fact). As sureties failed to meet their burden of proof, their claim must fail.

■ Unlike the situation in *State v. Foster,* 561 P.2d 1359 (Okla.1977), relied on by sureties, or in *O'Neil v. People, supra,* use of a printed bond form in this case was not shown to be compulsory. Without any proof that the printed bond form provided by the court and executed by sureties was not *"in fact* the product of a free and voluntary undertaking," and that sureties' "assumption of excess liability was coerced," the trial court was under no duty to look beyond the plain language of the undertaking in determining that the sureties failed to prove they had been "required" to post bond providing for suprastatutory liability. *Gibson v. State,* 655 P.2d 1028 (Okla.1982).

JUDGMENT AFFIRMED.

TURSI and JONES, JJ., concur.