**AMERICAN OIL COMPANY, a corporation, Plaintiff,**

v.

**William EGAN and Northwestern Bell Telephone Company, a corporation, Defendants.**

**No. 4–71 Civ. 595.**

United States District Court,
D. Minnesota,
Fourth Division.

April 6, 1973.

Robins, Davis & Lyons, by Dale I. Larson, Minneapolis, Minn., for plaintiff.

Mullin, Swirnoff & Weinberg, by William E. Mullin, Minneapolis, Minn., for defendant William Egan.

NEVILLE, District Judge.

Plaintiff American Oil Co. (American), a Maryland corporation doing business in the state of Minnesota, has petitioned this court to remand this case

to the Minnesota Hennepin County District Court from whence it was removed by defendant. The original case arose out of the termination of a distributorship agreement between plaintiff and defendant Egan, a Minnesota resident, whereby Egan sold and distributed the American products. In the latter part of September, 1971, Egan discontinued representing American products and commenced the selling and handling of products of the Mobile Oil Co. Inasmuch as the outstanding telephone directories contained advertisements and listings linking Egan with American products, American had the telephone company place an "intercept" on Egan's line to determine whether incoming callers wanted Egan's line or that of an American dealer. Egan thereupon filed suit in the Minnesota District Court to obtain a temporary injunction enjoining the intercept. This injunction was subsequently granted. American however countered by filing suit, also in Hennepin County District Court, against Egan and Northwestern Bell Telephone Co. to dissolve the previously issued injunction and for other relief. Defendant Egan's counterclaim in the second suit, the pleading which has raised the issue now before this court, alleges *inter alia* certain violations by American of the Federal Antitrust laws, including sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and seeks relief pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Defendant's counterclaim asserts damages totalling $360,000, a sum well in excess of this court's jurisdictional amount. On November 19, 1971, the same day on which the counterclaim was filed, defendant petitioned for removal to this court, asserting that the antitrust allegations contained in his counterclaim are within the exclusive jurisdiction of the federal courts. A new telephone directory was issued in December 1971 so injunctive relief no longer is of import. Plaintiff's response to defendant's counterclaim asserts an action in contract law for breach of the franchise agreement and seeks damages in the amount of $75,000.

Nearly fifteen months transpired before American suddenly questioned this court's jurisdiction in the form of a remand petition filed February 9, 1973. Extension and delay have characterized these fifteen months in both the pleading and discovery stages, though discovery now has been commenced and at least several depositions have been completed. Petitioner American now asserts that removal to federal court was improper for several reasons: First, well established authority holds that removability depends on the allegations of pleading employed and served by the plaintiff and therefore removal cannot be predicated on allegations contained in a counterclaim; second, inasmuch as federal jurisdiction on a remand petition is derivative from the jurisdiction of the state court, there can be no federal jurisdiction in this case because a state court cannot take cognizance of a federal antitrust claim;[1] third, in any event in a diversity action, absent a federal question, only a nonresident defendant can remove pursuant to 28 U.S.C. § 1441(b). American also moves for all costs and disbursements incurred by reason of the removal proceedings and seeks dismissal of the federal antitrust claim. Defendant Egan argues against the remand petition by asserting that this court has subject matter jurisdiction over his antitrust counterclaim and that any defects in the removal procedure have been waived by American by its delay and prior participation in pretrial procedures before this court.

Defendant's removal petition clearly did not conform with the applicable principles governing removal. 28 U.S.C. § 1441(a), which serves as the statutory basis for removal, allows that unless otherwise expressly provided by Congress "any civil action brought in a State court of which the district courts of the United States have original juris-

---

1. This argument is in a sense a circuity and would appear to have no merit.

diction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Section 1441(b) of the statute limits removal to non-citizen defendants in cases where federal jurisdiction is based on diversity of citizenship rather than a federal question. Interpreting the above quoted language, well established case law requires federal jurisdiction to be disclosed on the face of plaintiff's complaint. *See* Gully v. First National Bank in Meridian, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Gatch v. Hennepin Broadcasting Associates, Inc., 349 F.Supp. 1180 (D.Minn.1972), and the cases cited therein. The cases appear to establish the principle that a plaintiff should be allowed to choose the theory of his own lawsuit. Professor Moore points out that "where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." 1A Moore's Federal Prac. ¶ 0.160, p. 474. The only colorable basis for federal jurisdiction at the time of removal appeared in defendant Egan's counterclaim. Even had plaintiff's initial complaint established diversity jurisdiction, removal would have been improper by a resident defendant such as Egan. Therefore it is clear that removal was improper *ab initio*.[2]

The more difficult question for the court is whether the defect in the removal procedure was waivable and whether the plaintiff in fact waived it. It is axiomatic that subject matter juris-

diction of a federal court cannot be waived, nor conferred by consent or agreement of the parties. But certain jurisdictional and procedural matters may be waived, such as proper service of process or jurisdiction over the person. *See generally* 1A Moore's Federal Practice, 0.157(11), pp. 351–52. The court finds that American has not waived its right to object to removal. The Supreme Court has not set down any hard and fast rule for determining whether defects in the removal process have been waived. The cases cited by the defendant to support the maintenance of federal jurisdiction require each case to be viewed in light of its own peculiar circumstances and allow the trial judge considerable discretion in making such a determination. *See* MacKay v. Uinta Development Co., 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913); American Fire and Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); Baggs v. Martin, 179 U.S. 206, 21 S.Ct. 109, 45 L.Ed. 155 (1900). The court notes that all of these cases were actually tried and then subsequently attacked on appeal. In contrast, the case at bar still is in preliminary discovery stages.

Although neither party has cited any applicable case law from this jurisdiction, the court favorably views the words of Judge Sanborn, a former member of this court, who stated in Noethe v. Mann, 27 F.2d 451, 452 (D.Minn. 1928):

" . . . where there is no express waiver or consent to submit to the jurisdiction of the federal court, it is only such conduct on the part of those seeking the remand, as might reasona-

---

**2.** Defendant Egan's brief refers to several cases to support the proposition that the court can look to the counterclaim to determine removability. See *e. g.* National Upholstery Co. v. Corley, 144 F.Supp. 658 (M.D.N.C.1956). The five cases so cited, however, are all district court cases and involve distinguishable fact settings. All involve state tort claims resulting from auto accidents in which the asserted ground for federal jurisdiction is diversity of citizenship. In each case, the counterclaim was relied on solely to establish the jurisdictional amount; and the courts were careful to evince a particular concern for protecting the rights of non-citizen defendants to litigate matters over which the federal courts have jurisdiction. Such rights were not at stake in this case because the defendant here could have filed a separate antitrust action in federal court in lieu of the antitrust counterclaim.

bly be said to estop them from denying that they had consented, which would prevent a remand. They must ordinarily have done something or enjoyed something which would make it inequitable or unfair to permit them to assert their right to a remand of the cause . . .. Where no injury will be done to any one, where the federal court has been asked for no relief, where no actual consent to its jurisdiction has been obtained, and where there has been nothing but mere delay, without any showing of prejudice resulting therefrom, I am of the opinion that a party who has improperly removed such a case as this can have no just cause for complaint, if it is sent back to the court where it was commenced."

The court finds that petitioner's actions in this case have not caused any real prejudice or hardship to the defendant. Although some fifteen months have elapsed since the removal, defendant is still free to pursue his antitrust claim in federal court. The statute of limitations on the antitrust violation asserted in defendant's counterclaim is four years, see 15 U.S.C. § 15b, and would appear not to have run as yet. Further, depositions which already have been taken and other discovery matter should be of use in any subsequent and further proceedings.

■ The court concludes that removal of this case to federal court was improper and that the petitioner has not waived its right to object thereto. Inasmuch as the case is not properly before this court, the Hennepin County District Court can take such action as it deems appropriate regarding dismissal of defendant's antitrust counterclaim and this court will not rule thereon. As to petitioner's request for costs, such matters are generally within the sound discretion of the trial court. *See e. g.* Algonquin Gas Transmission Co. v. Gregory, 105 F.Supp. 64, 67 (D.Conn.1952). Petitioner has not presented any valid reasons for allowing costs in this particular case and there being no indication that

defendant's removal petition was not made in good faith, the court denies petitioner's request therefrom. A separate order has been entered.